THERIOT, J.
|2The defendant-appellant, Ciber, Inc., seeks reversal of the trial court’s judgment overruling its peremptory exception raising the objection of no cause of action. For the following reasons, we affirm.
FACTS
The peremptory exception raising the objection of no cause of action is designed to test the legal sufficiency of the petition and for the purposes of determining the issues raised by the exception, the well-pleaded. facts in the petition must be accepted as true. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690 (La.7/5/94), 640 So.2d 237, 241. The facts, as alleged in CamSoft Data Systems, Inc.’s petition for declaratory judgment, supplemental relief, damages, and attorney’s fees, are as follows.
CamSoft is a technology company owned by Carlo MacDonald. In late 2002, Cam-Soft became a licensed retailer for Tropos Networks, Inc., a technology company that manufactures a type of wireless networking hardware that allows for the remote connection of laptops and other computer equipment throughout a large geographical area network.
In 2003, former New ■ Orleans Mayor Ray Nagin announced an initiative to deploy surveillance cameras throughout the city (“Crime Camera Project”). Thereafter, CamSoft formed an alliance with two New Orleans companies, Active Solutions, LLC, and Southern Electronics Supply Company, Inc., to design; develop, and market a wireless surveillance system for the Crime Camera Project. Active Solutions is co-owned by defendants Brian Fitzpatrick and Jeff Burkhardt. Defendant, Ignatious A. Perrin, III, is the president of Southern Electronics. CamSoft’s petition prefers to these companies and individuals as the “Active-Southern Defendants.”
CamSoft used the Tropos technology to develop a “Crime Camera System” designed to provide real time surveillance of the areas where the cameras were installed. In early discussions, CamSoft and the Active-Southern Defendants agreed to keep strictly confidential the Crime Camera System’s technological design features. They further agreed to market their system beyond New Orleans to Baton Rouge, other parts of Louisiana, and to Jacksonville, Florida.
In November 2003, following discussions and successful initial testing, Cam-' Soft and the Active-Southern Defendants allegedly agreed upon the following terms should they obtain the New Orleans Crime Camera Project: 1) CamSoft would receive all revenues generated from the sale of its Tropos and wireless equipment, as well as the installation and ongoing maintenance; 2) Active Solutions., would receive all revenues generated from the sale of its weatherized Sony cameras; 3) Southern Electronics would receive revenues for its centralized accounting function and project coordination with other vendors (e.g. electrical); .and 4) all parties would bear the risk of loss if the City of New Orleans failed to remit payment for any equipment or services performed. .
. In early 2004, CamSoft and the Active-Southern Defendants began a pilot project deployment in the New Orleans high crime Iberville housing project. The Mayor’s Office of Technology (“MOT”) supervised the pilot project. Defendant Gregory Mef-fert was . MOT’s Chief Technology Officer, or “CTO,” during that time. Defendants Mark St. Pierre and Mark Kurt co-owned *1012 a private technology company called Imagine Software, LLC. Imagine performed work for the City of New Orleans under the direct | ¿authority of Meffert. Defendant Christopher Drake was one of Imagine’s employees; he also worked for MOT and was one of the people who supervised the pilot project. The petition refers to these individuals and Imagine Software as the “City Defendants.”
Toward the end of.the pilot, project, St. Pierre and Drake arranged a secret meeting with Meffert and Perrin of Southern Electronics. As CTO, Meffert was responsible for all technology-related projects in New Orleans. At that meeting, the four individuals concocted the following kickback scheme: Meffert would use his influence over city government to land the Active-Southern Defendants the lucrative Crime Camera Project; in return, the City Defendants would take over CamSoft’s wifeless network integrator role on the New Orleans project and all future 'Crime Camera System sales outside of New Orleans. Meffert ’ also discussed using his influence to obtain marketing agreements with big technology vendors, including defendants Dell, Inc. and Ciber, Inc. Perrin agreed to the scheme and notified Fitzpatrick of the arrangement.
At some point, Meffert demonstrated the Crime Camera System to Kimberly Füry, Dell, Inc.’s Executive Director of State and Local Government Sales. Mef-fert told Fury that the pilot project was highly confidential and that CamSoft designed the wireless network using Tropos’ wireless networking equipment. Fury told Meffert that Dell would be interested in selling the system through its national and international sales channels.
In April 2004, the City of New Orleans awarded the Crime Camera contract to Southern Electronics. Thereafter, on July 8, 2004, a secret meeting- took place between the Active-Southern Defendants, the City Defendants, and Steve Reneker, manager of Dell’s Public Safety - and I r,Criminal Justice Division. These parties reached, the following agreement: 1) Dell would market and sell the Crime Camera System nationally and internationally; 2) the Active-Southern Defendants would manufacture and.sell its weatherized Sony camera to Dell; ,S) and the City.Defendants would become a Dell Integrated Service Provider and act as the wireless network designer, integrator, and installer. In exchange, the Active-Southern Defendants turned over CamSoft’s confidential and proprietary technical and business information regarding the Crime Camera System to the City Defendants and Dell. Dell, Inc., Dell Marketing, L-P-» employee Billy Ridge, and employee Steve Reneker are referred to in the petition as the “Dell Defendants.”
The City Defendants entered into a similar kickback scheme with defendant, Cir ber, Inc. On May 7, 2004, .Giber hired Imagine Software as a subcontractor to work in New Orleans. On June 23, 2004, Mayor Nagin signed an executive order giving Meffert unilateral authority to make no-bid purchases through Ciber’s General Services Administration schedule of rates (“GSA Contract”). Ciber also agreed to give additional subcontractor work to defendant, NetMethods, LLC, a company formed by Meffert and St. Pierre to receive proceeds from work obtained outside New Orleans. The subcontractor agreement between Ciber and NetMethods was needed to shield from scrutiny kickback payments St. Pierre made to Meffert and Mayor Nagin for awarding work inside New, Orleans to Ciber and Dell.
..On July 19, 2004, Southern Electronics signed the official- Crime Camera Project contract with the City of New Orleans. As per the November 2008 agreement it had with the Active-Southern Defendants, *1013 CamSoft allegedly began performing work on the project. It deployed the wireless Crime Camera System. throughout New Orleans’ second and sixth | ^police districts. Over the next year and a half, the City Defendants who were supervising the project watched and learned CamSoft’s confidential and proprietary business information and trade secrets.
The City Defendants and Dell ultimately devised a method of selling cameras for the Crime Camera System through Dell’s no-bid, direct purchase contract with the state of Louisiana (“WSCA Contract”). Déll’s WSCA contract did not give it authority, however, to sell the other computer and wireless networking equipment needed to deploy a Crime Camera System. To avoid state regulator- scrutiny, Dell employees came up with' a method of misidentifying the equipment being sold by using different terms to describe it. The City Defendants and Dell then marketed themselves as the New Orleans Crime Camera System integrators and installers. Eventually, they sold various government officials on the erroneous and illegal notion that there was no need to properly issue requests for proposals under the Public Bid Laws, as they could directly procure the systems through Dell’s no-bid WSCA Contract.
Ciber and certain City Defendants/sub-eontractors knowingly misappropriated and stole CamSoft’s confidential-technical and business information. The Active-Southern Defendants coordinated with Ci-ber and the City Defendants on surveillance camera system sales to an Austin, Texas school district.
Following Hurricane Katrina in August. 2005, the federal government provided millions of dollars in federal funding to expand New Orleans’ crime camera network. In an effort to obtain the federal monéy, Ciber, the City Defendants, and the Dell Defendants developed a method of using their no-bid contracts to circumvent the July- 19, 2004 Contract and thereby squeeze out Southern Electronics, and by extension CamSoft. Meffert used 17his authority as CTO to stop making Crime Camera System purchases under the 2004 contract and, further,, to delay payment for priorwork.
MacDonald and CamSoft did not receive payment for work they had performed in New Orleans. Also, cognizant that city employees were installing Tropos equipment without purchasing it pursuant to the July 19, 2004 Contract, MacDonald advised Meffert and Perrin on January 10, 2006, via e-mail, that CamSoft would no longer perform work under the July 19, 2004 Contract. CamSoft continued, however, to market the Crime Camera System to the City of Baton Rouge.
On June 20, 2006, Meffert placed New Orleans’ first order for cameras. Dell sold New Orleans the wireless networking, computer hardware, and cameras through its no-bid WSCA Contract; Ciber billed the City for its subcontractors’ (i.e. the City Defendants) installation of the Crime Camera System through its no-bid GSA Contract.
On July 15, 2006, Meffert resigned from public office. Prior to leaving office, Mef-fert, St. Pierre, and Kurt agreed that Kurt would take over as CTO. Ás a co-owner of Imagine Software, Kurt allegedly knew of the conspiracy to circumvent the July 19,. 2004 Contract. After Mayor Nagin appointed Kurt as acting CTO, Kurt continued the no-bid purchasing method until his resignatioii in February 2007.
Sales of Crime Camera Systems continued. In the summer of 2007, Dell and NetMethods sold and installed a Crime Camera System in Baton Rouge. They secured the no-bid contract by bribing Donald Evans, then acting CTO for the City of Baton Rouge, and used Dell’s no-bid WSCA Contract for equipment sales *1014 and installation charges. In January 2008, Meffert used his leverage with then acting CTO, Anthony-Jones, to obtain Ciber an entirely new Crime Camera System contract in New Orleans.
IsNetMethods and the Dell Défendants continued selling Crime Camera Systems both locally and nationally. The “MMR Defendants” (MMR Group, Inc., MMR Constructors, Inc., and MMR Offshore Services, Inc.) purchased NetMethod’s assets and liabilities in a secret sale in the summer of 2009. NetMethod’s employees, including defendant Billy Ridge (who formerly worked for Dell), transferred, their employment to MMR. MMR has -continued to receive ongoing no-bid Crime Camera System maintenance payments from the City of Baton Rouge.
PROCEDURAL HISTORY
Extensive civil and criminal litigation resulted from the prolonged controversy regarding sales of wireless surveillance systems by certain defendants. Active Solutions and Southern Electronics initiated legal proceedings in Civil. District Court in Orleans Parish on April-29, 2007, by filing suit against Dell, Ciber, Kurt, and other defendants for breach of contract, unfair trade practices, unjust enrichment, and tortious interference with a contract, all in connection with the July 19, 2004 contract between the City of New Orleans and Southern Electronics to provide surveillance equipment, technology, and design as well as installation of “crime cameras” for the Crirne Camera Project.[1]
After unsuccessfully attempting to intervene in that suit, CamSoft filed the present action against Active Solutions and Southern Electronics on September 18, 2009, seeking a declaratory judgment and damages. CamSoft claimed it primarily designed and developed the disputed wireless surveillance system. It sought judgment declaring its rightful ownership of the surveillance system and any “intellectual property” arising out of work performed in conjunction- with Active Solutions and Southern Electronics. |3CamSoft later amended the petition, pleading additional claims and naming seventeen more defendants. CamSoft alleged that a group of defendants knowingly: 1) conspired to misappropriate CamSoft’s confidential and proprietary technical designs, business information, and trade secrets while working as New Orleans city vendors; 2) used their access to New Orleans technology projects to design and construct a competing wireless video surveillance system; and 3) thereafter sold their competing system to state and local governments through the illegal use of no-bid contracts, which was often made possible through graft and bribery of public officials.
On December 14, 2009, the case was removed to federal court on the basis of federal question jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 1441(a) (2006). CamSoft vigorously opposed removal and moved to remand, but the federal district court found that the allegations of “ownership” over the potential or existing patent rights necessarily invoked federal patent law and gave rise to jurisdiction.[2] After CamSoft’s unsuccessful challenge to removal, the matter remained in federal court for five years until the federal district court remanded the case back to state court based on a finding by the federal fifth circuit court of appeal that the district court lacked jurisdiction.[3]
*1015 On February 10, 2015, following remand to the Nineteenth Judicial District Court, CamSoft filed.-a “Master Petition for Declaratory Judgment, Supplemental Relief, Damages, and Attorney’s Fees.” In separate pleadings, various exceptions, including peremptory exceptions of no cause of action, were filed by defendants “Del” (Dell Inc. and Dell Marketing, L.P.), Ci-ber, “MMR” (MMR Constructors, Inc., MMR Group, Inc., and MMR Offshore | mServices, Inc.), Mark Kurt, and Billy Ridge. ..Following a hearing, on April 20, 2015, the trial court took all matters under advisement. By minute entry dated May 21, 2015, the trial court stated, “The Court being of the opinion that this expansive petition contains factual allegations sufficient to state and support a cause of action, the Court hereby overrules the exceptions.”
Again in separate pleadings, the above-mentioned defendants appealed the trial court’s ruling, which included the Overruling of defendants’ peremptory exceptions of no cause of action. Though the denial of an exception of no cause of action is normally not appealable, La. R.S. 51:134-35 provides for an immediate appeal of such an interlocutory judgment related to antitrust claims. Van Hoose v. Gravois, 2011-0976 (La.App. 1 Cir. 7/7/11), 70 So.3d 1017, 1021.
On July 14, 2015, this Court rendered a per curiam opinion that dismissed the appeal of all the defendants and remanded to the trial court with instructions to render and sign a written judgment containing individual rulings as to each defendant on each of the exceptions pertaining to the antitrust claims. See CamSoft Data Systems, Inc. v. Southern Electronics Supply, Inc., 2015-0881 (La.App. 1 Cir. 7/14/15), 180 So.3d 382.
On July 23, 2015, the trial court signed a judgment as to Ciber only, on its peremptory exceptions of no cause of action and prescription. The court overruled Ciber’s exception of no cause of action.[4]. Ciber then re-urged its devolutive appeal to be considered by preference pursuant to La. R.S. 51:134. That appeal is now before us.
JyDISCUSSION ’
The objection that a petition fails to state a cause of action is properly raised by the peremptory exception. La. C.C.P. art. 927(A)(5). ,-In ruling on an exception of no cause of action, the trial court must determine whether the law affords any relief to the plaintiff if he proves the factual allegations in the petition and annexed documents at trial. Plaquemine Marine, Inc. v. Mercury Marine, 2003-1036 (La.App. 1 Cir. 7/25/03), 859 So.2d 110, 115. For the purposes of determining the issues raised by the exception, the well-pleaded facts in the, petition must be accepted as true. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690 (La.7/5/94), 640 So.2d 237, 241. Furthermore, the facts shown in any annexed documents must also be accepted as true. Cardinale v. Stanga, 2001-1443 (La.App. 1 Cir. 9/27/02), 835 So.2d 576, 578. No evidence may be introduced to support or controvert the objection that the petition fails, to state .a cause of action. La. C.C.P. art. 931. Any doubts are resolved in favor of the sufficiency of the petition. Van Hoose, 70 So.3d at 1021. Simply stat *1016 ed, a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim that would entitle him to relief. Fink v. Bryant, 2001-0987 (La.11/28/01), 801 So.2d 346, 349. The burden of proving that the petition fails to state a cause of action is upon the mover.’ Scheffler v. Adams and Reese, LLP, 2006-1774 (La.2/22/07), 950 So.2d 641, 647. Pleadings must be construed reasonably so as to afford litigants their day in court. When it can reasonably do so, the trial court should maintain a petition against a‘peremptory exception so as to afford the litigant an opportunity to present his evidence. Kuebler v. Martin, 578 So.2d 113, 114 (La.1991). An exception of no cause of action is likely to be granted | ^only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief. City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748, 756.
Appellate review of the denial of a peremptory exception of no cause of action is de novo because an exception of no cause of action presents a question of law and the trial court’s decision is based only on the sufficiency of the petition. Id. Appellate review regarding questions of law is “simply a review of whethér the trial court was legally correct or legally incorrect.” Thinkstream, Inc. v. Rubin, 2006-1595 (La.App. 1 Cir. 9/26/07), 971 So.2d 1092, 1100, writ denied, 2007-2113 (La.1/7/08), 973 So.2d 730.
When a petition states a cause of action as to any ground or portion of a demand, the exception should be overruled. Bayou Liberty Ass’n, Inc. v. St. Tammany Parish Council, 2005-1228 (La.App. 1 Cir. 6/9/06), 938 So.2d 724, 728. The correctness of conclusions'of law is not conceded for the ¡purposes of a ruling on an exception of no cause of action. Lambert v. Riverboat Gaming Enforcement Div., 96-1856 (La.App. 1 Cir. 12/29/97), 706 So.2d 172, 175, writ denied, 98-0297 (La.3/20/98), 715 So.2d 1221.
Ciber was made a defendant in Cam-Soft’s first supplemental- petition. This 29-page petition makes various allegations against Ciber urging several causes of action, including conspiracy to commit fraud, conspiracy to commit tortious interference of contract, and conspiracy to convert confidential business information. The allegations in the petition, taken as true, establish, at the very least, a cause of action. CamSoft also cites statutes as authority in süpport of these alleged causes of action.[5] As the 1 ^jurisprudence makes clear that only one cause of action need be established in order to overrule an exception of no cause of action, we find that the trial court was correct in overruling Ciber’s exception of no cause of action.
DECREE
The judgment overruling the peremptory exception of no cause of action filed by the defendant-appellant, Ciber, Inc., is affirmed. All costs of this appeal are assessed to Ciber, Inc.
AFFIRMED.
McDONALD, J. concurs with reasons.
McCLENDON, j. concurs in the result reached by the majority.

. Active Solutions, L.L.C. v. Dell, Inc., 2010-1590 (La.App. 4 Cir. 7/21/11), 73 So.3d 934.

. Camsoft Data Systems, Inc. v. Southern Electronics Supply, Inc., No. 09-1047-C, 2010 WL 763508 (M.D.La. March 4, 2010).

.Camsoft Data Systems, Inc. v. Southern Electronics Supply, Inc., 756 F.3d 327 (5th Cir.2014), cert. denied, — U.S. -, 135 S.Ct. 1162, 190 L.Ed.2d 914 (2015).

, The judgment did not overrule Ciber's peremptory exception of prescription, as the court allowed for additional argument on that issue. The exception of prescription is not at issue in this appeal. Specifically, the judgment'states, in pertinent part: “IT IS ORDERED, ADJUDGED, AND DECREED that Ciber, Inc.’s Peremptory Exception of No Cause of Action is OVERRULED: IT IS FURTHER HEREBY ORDERED, ADJUDGED, AND DECREED that, with respect to Ciber, Inc.’s Peremptory Exception of Prescription, the Court will allow additional argument and notify counsel.” .

. Ciber’s appeal focuses on- a cause of action related to Louisiana’s antitrust laws in order to take advantage of La. R.S. 51:134-35’s immediate appeal provisions, however, that procedural aspect of the appeal is not determinative as to whether the facts alleged in the petition support any claim that would entitle the plaintiff to relief.