STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2023 CA 0054

KIM & STEWART WIXSON, MELANIE & CHARLIE JONES, AIMEE AND
TOMMY JOE WOODARD, JR., AND THE LOUISIANA INDEPENDENT
PHARMACIES ASSOCIATION, INC.

VERSUS

THE STATE OF LOUISIANA THROUGH THE OFFICE OF THE GOVERNOR,
DIVISION OF ADMINISTRATION, OFFICE OF GROUP BENEFITS, AND
JAY DARDENNE, IN HIS OFFICIAL CAPACITY AS LOUISIANA
COMMISSIONER OF ADMINISTRATION

**Judgment Rendered: OCT 2 0 2023**

\* \* \* \* \* \*

On appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number C726389

Honorable Tarvald A. Smith, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Karl J. Koch<br>Baton Rouge, LA | Counsel for Plaintiffs/Appellants<br>Kim and Stewart Wixson, Melanie<br>and Charlie Jones, Aimee and<br>Tommy Joe Woodard, Jr. and The<br>Louisiana Independent Pharmacies<br>Association, Inc. |
| J. Wendell Clark<br>Mark L. Barbre<br>J. Weston Clark<br>Mary Eliza Baker<br>Baton Rouge, LA | Counsel for Defendants/Appellees<br>State of Louisiana through the Office<br>of the Governor, Division of<br>Administration, Office of Group<br>Benefits, and Jay Dardenne, in his<br>official capacity as Louisiana<br>Commissioner of Administration |

Carey T. Jones
Angelique Duhon Freel
David Jeddie Smith
Emily Andrews
Craig Cassagne
Scott N. Whitford
Jeffrey Martin Landry
Baton Rouge, LA

Counsel for Intervenor/Appellant
State of Louisiana through Jeff
Landry, in his official capacity as
Attorney General

Tina Vanichchagorn
John C. Walsh
Terrel T. Kent
Baton Rouge, LA

Counsel for Intervenor/Appellee
John Bel Edwards in his official
capacity as Governor of the State
of Louisiana

Larry E. Demmons
Metairie, LA

Counsel for Intervenor/Appellee
CaremarkPCS Health, LLC

Jennifer Warden Herbert
Mark E. Van Horn
A.J. Hebert, III
Jessica Salafia Ward
New Orleans, LA

\* \* \* \* \* \*


BEFORE:  GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

2

**GUIDRY, C.J.**

The plaintiffs appeal from a judgment granting a peremptory exception of no cause of action. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

A contract between the Louisiana Office of Group Benefits (OGB) and CaremarkPCS Health, LLC (Caremark) is the basis of this litigation. Plaintiffs, Kim and Stewart Wixson, Melanie and Charlie Jones, and Aimee and Tommy Joe Woodard, Jr., are pharmacists, OGB beneficiaries, and owners/operators in the pharmacy industry. The Louisiana Independent Pharmacies Association, Inc., also a plaintiff, is a membership association consisting of independent retail pharmacies operating in the state of Louisiana.

On December 2, 2022, the plaintiffs filed a petition for injunctive relief. Named defendants in the petition were the State of Louisiana through the Office of the Governor, Division of Administration, OGB, and Jay Dardenne in his official capacity as the commissioner of administration for the State of Louisiana. In said petition, the plaintiffs allege that Commissioner Dardenne declared his intention to enter into a contract (the Caremark contract) without the final approval of the Joint Legislative Committee on the Budget (JLCB). The plaintiffs further allege that Commissioner Dardenne and OGB's actions were in direct violation of statutory law, namely La. R.S. 42:802(D)(1).[1]

The defendants filed exceptions to the plaintiffs' petition. The defendants contended that the plaintiffs failed to state a cause of action because La. R.S. 42:802(D)(1) does not apply to the Caremark contract. They also claimed that the plaintiffs failed to exhaust administrative remedies and had no right of action.

---

[1] Attorney General Jeff Landry (hereinafter also referred to as a plaintiff) and Governor John Bel Edwards and Caremark (hereinafter also referred to as a defendant) filed petitions to intervene in this litigation.

3

On December 13, 2022, a hearing on the defendants' exceptions was held. On December 21, 2022, the trial court signed a judgment, sustaining the defendants' peremptory exception raising the objection of no cause of action and dismissing their claims.[2] The plaintiffs are now before this court appealing.

**DISCUSSION**

The question raised herein by the plaintiffs is whether the trial court erred in sustaining the peremptory exception raising the objection of no cause of action. A cause of action, for purposes of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. Ramey v. DeCaire, 03-1299, p. 7 (La. 3/19/04), 869 So. 2d 114, 118. The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Ramey, 03-1299 at p. 7, 869 So. 2d at 118. The burden of establishing that the petition fails to state a cause of action is on the mover. MAW Enterprises, LLC v. City of Marksville, 14-0090, p. 6 (La. 9/3/14), 149 So. 3d 210, 215.

Generally, no evidence may be introduced to support or controvert the exception of no cause of action. La. C.C.P. art. 931. All facts pled in the petition must be accepted as true, and any doubts are resolved in favor of the sufficiency of the petition to state a cause of action. Truitt v. West Feliciana Parish Government, 19-0808, pp. 3-4 (La. App. 1 Cir. 2/21/20), 299 So. 3d 100, 103. Facts shown in any documents annexed to the petition must also be accepted as true. See Spinks Construction, Inc. v. Quad States Construction, LLC, 17-0580, p. 6 (La. App. 1st Cir. 12/21/17), 240 So. 3d 215, 220. The correctness of conclusions of law, however, is not conceded for the purposes of a ruling on an exception of no cause

---

[2] The plaintiffs were given the opportunity to amend their petition within seven days of the judgment.

of action. CamSoft Data Systems, Inc. v. Southern Electronics Supply, Inc., 15-1260, p. 12 (La. App. 1st Cir. 9/23/15), 182 So. 3d 1009, 1016.

The only issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Truitt, 19-0808 at p. 4, 299 So. 3d at 103. If the petition alleges sufficient facts to establish a case cognizable in law, the exception raising the objection of no cause of action must fail. In addition, when a petition states a cause of action as to any ground or portion of a demand, the exception should be overruled. Truitt, 19-0808 at p. 4, 299 So. 3d at 103. Appellate courts review a judgment sustaining a peremptory exception raising the objection of no cause of action de novo. Ramey, 03-1299 at pp. 7-8, 869 So. 2d at 119.

In their petition, the plaintiffs assert that the Louisiana Legislature granted certain authority to the OGB:

> This grant of authority included the authority for OGB to enter into contracts for health care plans or systems, "including but not limited to any health care service, delivery system, benefits programs, insurance, or any other plan or programs that may be authorized by law." La. R.S. 42:802 (B)(8)(b)(ii). But this law did not provide OGB with unlimited or unconditional authority to enter into contracts but instead provided that "any new plan of benefits or the annual plan of benefits submitted under the direction of the Commissioner of Administration for the life, health, or other benefit programs offered through the [OGB] or any professional, personal, and social services contracts" (except for certain contracts not at issue here) "shall be subject to review and final approval by the [JLCB]." La. R.S. 42:802(D)(1).

The plaintiffs allege that, "[t]hrough the authority granted to it by La. R.S. 42:802, the [OGB] decided to contract with a company to provide pharmacy benefit manager (PBM) services." The petition reads: PBMs are also used by many health insurers as third-party administrators to manage their pharmacy benefits by performing functions such as providing verification of coverage, processing and paying prescription claims, negotiating with drug manufacturers, and other related functions. The plaintiffs further allege that Commissioner

5

Dardenne indicated that he would enforce the provisions of the subject contract even if the JLCB did not want him to proceed. The petitions states: "At this time, although the proposed contract document has been signed by OGB and Caremark there is no contract between the parties because such a contract cannot exist unless and until it is approved by the [JLCB]." Attached to the petition is a memo from the Office of State Procurement/Division of Administration, which reads:

> The above referenced contract has been reviewed by the Office of State Procurement. The document ... is ready for submission to the [JLCB]. Upon approval of the proposed contract ... in accordance with La. R.S. 42:802, please return the "**Agency Memo to OSP After JLCB Approval**," along with the stamped contract from the JLCB.
>
> **The contract will not receive final approval by OSP until it has been approved by JLCB ... .**

As set forth by La. R.S. 42:802:

> B. [The OGB] shall have the following powers and duties:
>
> \*\*\*
>
> (6) *To establish benefit plans*, under the direction of the commissioner of administration, *for the life, health, and other benefit programs offered through the office*. This duty shall include the responsibility to ensure, to the greatest extent practicable, that the plans for benefits and coverages available for employees in all parts of the state are comparable with respect to coverages offered.
>
> \*\*\*
>
> (8)(a) *To negotiate contracts under the provisions of Chapter 17 of Subtitle III of Title 39 of the Louisiana Revised Statutes of 1950*, in the best interests of the office and its covered persons. The [OGB] is specifically authorized *to negotiate and contract directly with* the following:
> (i) Health maintenance organizations as defined by R.S. 22:242(7).
> (ii) A group purchaser as defined in R.S. 40:2202(3).
> (iii) A preferred provider organization.
> (iv) A health care provider or providers for formation of a preferred provider organization as defined by R.S. 40:2202(5).
>
> (b) The office is specifically authorized *to negotiate and contract directly for* the following:
> (i) Provision of basic health care services and other health care services to the program's covered persons.

(ii) Any other health care plan or systems, including but not limited to any health care service, delivery system, benefits programs, insurance, or any other plan or programs that may be authorized by law.

(c) For the purposes of this Paragraph, the basic health care services provided under a contract for a preferred provider organization or a health maintenance organization shall be those services which are covered under the [OGB] Schedule of Benefits. Nothing herein shall prohibit the office from adopting rules or regulations to prevent or prohibit adverse selection between programs offered by the office.

(d) *Any such contract shall be subject to review and final approval by the appropriate standing committees of the legislature* having jurisdiction over review of agency rules by the [OGB] as designated by R.S. 49:966(B)(21)(c), or the subcommittees on oversight of such standing committees, and the office of state procurement of the division of administration.

\*\*\*

D. (1) Notwithstanding any other provision of this Section to the contrary, *any new plan of benefits or the annual plan of benefits* submitted under the direction of the commissioner of administration for the life, health, or other benefit programs offered through the [OGB] *or any professional, personal, and social services contracts* other than contracts for legal services or actuarial services negotiated through the [OGB] *under the provisions of Chapter 17 of Subtitle III of Title 39 of the Louisiana Revised Statutes of 1950* as provided in Subsection A and Paragraph (B)(8) of this Section *or any contracts in connection therewith shall be subject to review and final approval by the [JLCB].*

(Emphasis added.)

The defendants contend that the facts pled in the plaintiffs' petition are insufficient to state a cause of action under La. R.S. 42:802. According to the defendants, the proper reading of La. R.S. 42:802(D)(1), as it concerns contracts, is as follows: any professional, personal, and social services contracts other than contracts for legal services or actuarial services negotiated through the procurement code or any contract in connection therewith are subject to review by the JLCB. The defendants contend that the contract in question, a contract for pharmacy benefit manager services, is a consulting services contract. The defendants thus argue that the contract is not of the kind contemplated by Paragraph (D)(1) of the statute, is not subject to JLCB review, and that the

7

plaintiffs have failed to state a cause of action. The plaintiffs, on the other hand, seem to contend that all contracts entered into for health or benefit programs and/or all contracts in connection with a new or annual plan of benefits are contemplated under Paragraph (D)(1).[3] The plaintiffs contend that the Caremark contract, as a contract related to a new or annual plan of benefits, is subject to JLCB review.

Whether the plaintiffs have stated a cause of action is based upon interpretation of the statute. The interpretation of any statutory provision starts with the language of the statute itself. Oubre v. Louisiana Citizens Fair Plan, 11-0097, p. 11 (La. 12/16/11), 79 So. 3d 987, 997. It is a well-established principle of statutory construction that, absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; La. R.S. 1:4; Cleco Evangeline, LLC v. Louisiana Tax Commission, 01-2162, p. 5 (La. 4/3/02), 813 So. 2d 351, 354.

Words and phrases shall be read with their context and construed according to the common and approved usage of the language. La. R.S. 1:3. Further, every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. Courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found. Oubre, 11-0097 at p. 12, 79 So. 3d at 997. The meaning and intent of a law is determined by a consideration of the law in its

---

[3] In the petition, the plaintiffs reference subparagraph (B)(8)(b)(ii) of the statute, which authorizes OGB to contract directly for certain health services and benefit programs and seemingly conflate it with the provision of Paragraph (D)(1) providing that "any new plan of benefits or the annual plan of benefits submitted under the direction of the commissioner of administration for the life, health, or other benefit programs" is subject to JLCB review.

8

entirety and all other laws on the same subject matter, and the court's construction should be placed on the provision in question which is consistent with the express terms of law and with the obvious intent of the lawmaker in enacting it. Richard v. Hall, 03-1488, p. 27 (La. 4/23/04), 874 So. 2d 131, 151.

In the present matter, when the entirety of the La. R.S. 42:802 is examined, we agree with the trial court that Paragraph (D)(1) does not contemplate the Caremark contract in question. In making our determination, we are reminded that work rendered by pharmacy benefit managers falls within the definition of a "consulting service" under the procurement code. See La. R.S. 39:1556(10). Louisiana Revised Statutes 39:1556(10) specifically provides: "Consulting service" means "work, other than professional, personal, or social service ... including but not limited to such areas as ... pharmacy benefit managers ... ."

Notably, as originally proposed in 2015, La. R.S. 42:802(D)(1) would have made applicable to all procurement code contracts review and final approval by a standing committee of the legislature. The language of Paragraph (D)(1) was changed, however, and as enacted in 2015, Paragraph (D)(1) limited the review and approval of procurement code contracts to those classified as professional, personal, and social services, or any contracts in connection therewith. See 2015 LA S.B. 260 (April 3, 2015) and La. R.S. 42:802 (prior to amendment by 2018 La. Acts, No. 603 § 1).[4]

---

[4] Paragraph (D)(1) as originally proposed in 2015 read as follows:

> Notwithstanding any other provision of this Section to the contrary, any new plan of benefits or the annual plan of benefits submitted under the direction of the commissioner of administration for the life, health, and other benefit programs offered through the Office of Group Benefits *or any contracts negotiated through the Office of Group Benefits under the provisions of Chapter 17 of Subtitle III of Title 39 of the Louisiana Revised Statutes of 1950 as provided in Subsections A and B(8) of this Section* shall be subject to review and final approval by the appropriate standing committees of the legislature having jurisdiction over review of agency rules by the Office of Group Benefits as designated by R.S. 49:968(B)(21)(c), or the subcommittees on oversight of such standing committees, and the office of state procurement of the division of administration. [Emphasis added.]

9

Based on the plain language of Paragraph (D)(1), and guided by its legislative history, it is clear to us that the phrase "or any contracts in connection therewith" refers only to those certain contracts negotiated under the procurement code—professional, personal, and social services.[5] That is to say, contrary to any of the plaintiffs' contentions, we do not find that the phrase broadens the language of Paragraph (D)(1), making it applicable to all contracts related to the provisions therein. Even more, we do not find, based on a plain reading of the text, that Paragraph (D)(1) makes provisions for any contracts other than those expressly enumerated in the text.[6]

Indeed, in drafting Paragraph (D)(1), the legislature made clear the contracts which are subject to JLCB review. And we note, under the well-settled rules of statutory construction, the mention of one thing in a statute implies the exclusion of another. When the legislature specifically enumerates a series of things, such as contracts which are subject to JLCB review in this matter, the legislature's

---

As enacted in 2015, Paragraph (D)(1) read:

> Notwithstanding any other provision of this Section to the contrary, any new plan of benefits or the annual plan of benefits submitted under the direction of the commissioner of administration for the life, health, and other benefit programs offered through the Office of Group Benefits *or any professional, personal, and social services contracts other than contracts for legal services or actuarial services negotiated through the Office of Group Benefits under the provisions of Chapter 17 of Subtitle III of Title 39 of the Louisiana Revised Statutes of 1950 as provided in Subsection A and Paragraph (B)(8) of this Section or any contracts in connection therewith* shall be subject to review and final approval by the appropriate standing committees of the legislature having jurisdiction over review of agency rules by the Office of Group Benefits as designated by R.S. 49:968(B)(21)(c) … . [Emphasis added.]

Additionally, in 2018, La. R.S. 42:802(D)(1) was amended, giving the power of review and approval to the JLCB instead of legislative committees. See 2018 LA S.B. 480 (May 30, 2018).

[5] We do not find that the plaintiffs assert (in their petition and attached documents) that the Caremark contract is connected to a professional, personal, or social service contract, or that the Caremark contract is anything more than a contract for pharmacy benefit manager services, which is not a contract addressed by Paragraph (D)(1). Additionally, to the extent that the provisions of Paragraph (D)(1) would be deemed unclear and ambiguous, we find that the legislative history, as detailed above, evidences the legislature's intent to confine the review of contracts by the JLCB only to those which are enumerated in the text and to those related thereto.

[6] Any argument by the plaintiffs that the contracts for health and benefit programs under subparagraph (B)(8)(b)(ii) are contemplated within Paragraph (D)(1) fails under the plain wording of the text.

omission of other things, which could have easily been included, is deemed intentional. See State, through Department of Public Safety and Corrections, Office of State Police, Riverboat Gaming Division v. Louisiana Riverboat Gaming Commission and Horseshoe Entertainment, 94-1872, p. 17 (La. 5/22/95), 655 So. 2d 292, 302.

Accepting the plaintiffs' argument that JLCB review is required for all contracts entered into or in connection with a new or annual plan of benefits would lead to an illogical and strained interpretation of Paragraph (D)(1). There would be no reason for the legislature to first provide for *all* contracts related to a new or annual plan of benefits and to make those contracts subject to JLCB review, only to then provide for *more* contracts and to list specific contracts, which could also be related to new or annual plans of benefits, and which would also be subject to JLCB review. See State, through Department of Public Safety and Corrections, Office of State Police, Riverboat Gaming Division, 94-1872 at p. 18, 655 So. 2d at 302 (observing that statutes must be interpreted in such a manner as to render their meaning rational, sensible, and logical). We cannot construe the statute herein in such a manner as to produce absurd or unreasonable results. The law provides that a statute be accorded a fair and genuine construction, and it is well established that when a statute is clear and free of ambiguity, it must be given effect as written. ABL Management, Inc. v. Board of Supervisors of Southern University, 00-0798, pp. 5-6 (La. 11/28/00), 773 So. 2d 131, 135; Oubre, 11-0097 at p. 11, 79 So. 3d at 997.

The plaintiffs herein contend that all contracts entered into for health or benefit programs and/or all contracts in connection with a new or annual plan of benefits are subject to JLCB review. However, a plain reading of the text suggests otherwise. Hence, even when we accept the factual allegations in the plaintiffs' petition as true, we cannot say that the plaintiffs have stated a cause of action under

11

La. R.S. 42:802. Where the plaintiffs have not alleged that the Caremark contract is a new or annual plan of benefits, or alleged that the contract is for professional, personal, or social services, the plaintiffs have failed to allege a violation under La. R.S. 42:802(D)(1). The plaintiffs alleged that OGB entered into a contract for pharmacy benefit manager services. Given the plain language of the statute herein, such a contract is not subject to JLCB review. We therefore find no error in the trial court's determination sustaining the exception of no cause of action.

## CONCLUSION

For the above and foregoing reasons, the December 21, 2022 judgment of the trial court sustaining the exception of no cause of action is affirmed. All costs of this appeal in the amount of $2,580.00 are assessed to the plaintiffs/appellants, Kim and Stewart Wixson, Melanie and Charlie Jones, Aimee and Tommy Joe Woodard, Jr., and the Louisiana Independent Pharmacies Association, Inc. and the State of Louisiana through Jeff Landry in his official capacity as Attorney General.

**AFFIRMED.**