STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2025 CA 0356

MARILEE CASH, NANCY DICKIE, AILEEN HENDRICKS, REBECCA MCCARTER, DAYNE SHERMAN, AND DEBRA A. THORNTON

VERSUS

OFFICE OF GROUP BENEFITS, OFFICE OF THE GOVERNOR, DIVISION OF ADMINISTRATION, AND THE STATE OF LOUISIANA

JUDGMENT RENDERED: **DEC 1 9 2025**

* * * * * * *

Appealed from the Nineteenth Judicial District Court
Parish of East Baton Rouge • State of Louisiana
Docket Number 638,759 • Section 21

The Honorable Ronald R. Johnson, Presiding Judge

* * * * * * *

| | |
|---|---|
| Kenneth H. Hooks, III | COUNSEL FOR APPELLANTS |
| Richard J. Dodson | PLAINTIFFS—Marilee Cash, Nancy |
| Michael A. Colomb | Dickie, Aileen Hendricks, Rebecca |
| L'Reece David | McCarter, Dayne Sherman, and |
| Baton Rouge, Louisiana | Debra A. Thornton |
| -and- | |
| J. Arthur Smith, III | |
| Baton Rouge, Louisiana | |
| | |
| Michael R.D. Adams | COUNSEL FOR APPELLEES |
| Monica Gant Mouton | DEFENDANTS—Office of Group |
| Ashley J. McCullen | Benefits, Office of the Governor, |
| Corey Pierce | Division of Administration, and the |
| Baton Rouge, Louisiana | State of Louisiana |

* * * * * * *

**BEFORE: MILLER, EDWARDS, AND FIELDS, JJ.**

**EDWARDS, J.**

Plaintiffs appeal a judgment of the district court that sustained Defendants' peremptory exception raising the objection of no cause of action to Plaintiffs' Third Amended Petition and dismissed all of Plaintiffs' claims against Defendants. For the reasons that follow, we reverse.

## BACKGROUND FACTS

This lawsuit involves certain actions taken by the Office of Group Benefits ("OGB") in the mid-2010s. OGB is an agency of the state of Louisiana within the Office of the Governor, Division of Administration. La. R.S. 42:801(A). OGB is statutorily charged with administering and implementing all programs and benefit plans offered to employees of the state of Louisiana. See La. R.S. 42:802(A)(2). Pertinent hereto, OGB has the power and duty to adopt and promulgate rules and regulations for the administration, operation, and management of programs and benefit plans offered through OGB; to establish benefit plans, under the direction of the commissioner of administration, for the life, health, and other benefit programs offered through OGB; and to establish premium rates, under the direction of the commissioner of administration and in consultation with actuaries, for the plans offered through OGB. See La. R.S. 42:802(B)(1), (6), & (7).

The rules promulgated by OGB are found in Title 32 of the Louisiana Administrative Code ("LAC") and set forth the specifics of each health care plan available to OGB members including the schedule of benefits and prescription drug benefits for each plan offered. Title 32 also contains a statement of contractual agreement between OGB and the covered employee. See LAC 32:I.507. Any amendment or modification of the plans contained in Title 32, with the exception of the pharmacy benefits management program, must "be promulgated subject to the applicable provisions of law[.]" LAC 32:I.517; see also La. R.S. 42:802(A)(2) ("The

2

[OGB] . . . shall be subject to the provisions of the Administrative Procedure Act[.]").

In 2013, OGB's Preferred Provider Organization ("PPO") was privatized, and Blue Cross/Blue Shield of Louisiana ("BCBS") was selected to administer the PPO. Thereafter, OGB sought to significantly modify Title 32, presumably to coincide with the health plans offered by BCBS. On June 3, 2014, OGB announced changes to its health care and pharmacy plans, effective August 1, 2014. Modifications to existing plans included, among other things, increased out-of-pocket maximums; increased deductibles; significantly increased co-pays; increased out-of-pocket maximums for the prescription drug benefit; and removal of all vision coverage from the health care plan options. In addition, OGB proposed the addition of new plans available to State employees and retirees.

On September 23, 2014, the Attorney General of the State of Louisiana issued an opinion stating that "any modifications to the existing plans contained in Title 32 of the [LAC] must be accomplished in accordance with the procedures set forth in the Louisiana Administrative Procedure Act for rulemaking." La. Atty. Gen. Op. No. 14-0165, *3. Further, the Attorney General opined that La. R.S. 42:802 requires OGB to promulgate rules and regulations for the implementation, administration, and management of the new plans proposed by the OGB in accordance with the procedures set forth in the Louisiana Administrative Procedure Act ("APA") for rulemaking as well. La. Atty. Gen. Op. No. 14-0165, *3. In conclusion, the Attorney General stated, "If the OGB did not follow the procedures set forth in the Louisiana Administrative Procedure Act when it created new health care plans and/or modified the existing health care plans set forth in Title 32[,] then the validity of the plans becomes questionable." La. Atty. Gen. Op. No. 14-0165, *4.

Thereafter, OGB published a "Declaration of Emergency" in the Louisiana Register with an effective date of September 30, 2014, wherein the OGB announced

3

that it would be adopting emergency rules to codify the changes to the LAC that took effect in August of that year. The OGB cited an "imminent peril to the public health, safety[,] or welfare"—"financial exposure of the state, its plan enrollees, and other state programs resulting from a threat of litigation that rules are required to be promulgated by law"—to trigger the emergency rulemaking provision of the APA, La. R.S. 49:962.[1] OGB published a second "Declaration of Emergency" on February 20, 2015, that extended the first declaration until the Final Rule related to the new and/or modified OGB health plans became effective.

OGB published a Notice of Intent in the Louisiana Register on November 20, 2014,[2] to state its intent to revise and amend several provisions of the LAC, which were to become effective on March 1, 2015. OGB held a public hearing on the proposed plan changes on December 29, 2014, after the enrollment period closed and after the proposed plan changes were implemented. OGB published a Final Rule in the Louisiana Register in February 2015, adopting the changes that were the subject of the emergency rules, and OGB re-opened enrollment for its members on or about April 3, 2015.

## PROCEDURAL HISTORY

Plaintiffs, who are current employees or retirees of the state of Louisiana, filed a Petition for Declaratory and Injunctive Relief ("the petition") in the 19th Judicial District Court on April 21, 2015, wherein they named OGB, the Office of the Governor, the Division of Administration, and the State of Louisiana ("the State") (collectively "Defendants") as defendants. Plaintiffs generally asserted that they

---

[1] The APA underwent significant revisions in 2022. See La. Acts 663 (2022 Reg. Session). Louisiana Revised Statutes 49:962(A)(1)(a) (formerly La. R.S. 49:953.1) provides that an emergency rule can be adopted without prior notice or a public hearing if the agency's failure to adopt the rule on an emergency basis would result in imminent peril to the public health, safety, or welfare.

[2] OGB first published a Notice of Intent on October 20, 2014. That first Notice of Intent was withdrawn when OGB published its revised Notice of Intent on November 20, 2014.

"have been adversely affected by the Defendants' actions" related to State employee and retiree health care plans.

In the petition, Plaintiffs alleged that OGB violated rulemaking procedures of the APA, resulting in a deprivation of Plaintiffs' (1) procedural due process rights to notice and a reasonable opportunity to be heard on the new and existing health care plans and (2) substantive due process due to the uncertainty surrounding the available health care plans and their validity during 2014. Plaintiffs asserted that the December 29, 2014 public hearing was a "sham" and that there was no legitimate basis for the September 30, 2014 emergency rule. Plaintiffs also asserted that Defendants violated their fiduciary duties to Plaintiffs as administrators of the health care and benefits plans for State employees by depleting the OGB fund balance and "attempting to saddle [S]tate employees and retirees with the costs and burdens resulting from their own imprudence" during the fiscal crisis that plagued the State at that time. Lastly, Plaintiffs alleged Title 32 of the LAC constitutes a written contract between the State and its employees and retirees, and any attempts to change provisions of the contract, e.g., the available health care plans and their corresponding benefits, in violation of the APA equates to a violation of the contracts clause of the Louisiana Constitution.

Plaintiffs prayed for a declaratory judgment decreeing that (1) the modifications to OGB health care plans detailed in the petition are violations of the APA; (2) Defendants violated the due process and contracts clauses of the Louisiana Constitution; and (3) OGB violated its fiduciary duties as prudent administrator of Plaintiffs' health care and benefits plans. Plaintiffs also prayed for injunctive relief in the form of an order enjoining the application of the cited modifications to the OGB health care plans that are declared to be unconstitutional as prayed for in their declaratory relief.

5

Plaintiffs filed several amended petitions and a motion for class certification. The factual allegations of the petition remained largely the same, with the successive petitions adding claims for monetary damages and declaratory and injunctive relief as well as class allegations. On June 19, 2023, Plaintiffs filed a motion to amend their petition a third time. Defendants opposed Plaintiffs' motion, in part because they claimed the new allegations "are inadequately substantiated, which hinders Defendants['] ability to craft an informed and sufficient defense to said allegations." After a hearing, the district court signed an order on December 11, 2023, permitting Plaintiffs to file their Third Amended Petition.

The Third Amended Petition amended the title of the petition to "Class Action Petition for Declaratory and Injunctive Relief and for Damages." The Third Amended Petition also amended certain existing allegations to explicitly state that OGB unlawfully made multiple modifications to benefits and costs under the OGB health care plan without complying with the APA. Additionally, Plaintiffs alleged OGB "improperly increased the premiums of the Plaintiffs' [sic] . . . by 5 percent (5%)" without adhering to the APA and without providing Plaintiffs any notice of, or an opportunity to be heard on, said increased premiums. The Third Amended Petition also defined the proposed class.

Defendants filed a peremptory exception raising the objection of no cause of action to Plaintiffs' Third Amended Petition on July 12, 2024. Therein, Defendants argued that the Third Amended Petition "fail[ed] to state a cause of action upon which relief can be granted because the plaintiffs have failed to prove that damages exist." Defendants alleged that they "can show the court" that the named plaintiffs, along with those affected by the changes to the health care plans, were reimbursed for any change or increase to their medical services and/or prescriptions and placed back on their original plan until the Final Rule was adopted. Defendants included

in their memorandum in support of the objection of no cause of action screenshots of emails sent to OGB participants regarding reimbursements.

Defendants also argued their objection of no cause of action should be sustained because OGB's promulgation and adoption authority is protected under several provisions of the Louisiana Revised Statutes, including La. R.S. 9:2798.1, which provides immunity from tort liability for public entities and their officers and employees for the exercise or failure to exercise policymaking and discretionary acts within the course and scope of their lawful powers and duties.

Plaintiffs opposed Defendants' objection of no cause of action. Plaintiffs argued that the objection of no cause of action should be overruled because (1) Defendants' affirmative defense of immunity from suit is more properly decided on a motion for summary judgment or at trial on the matter; and (2) Plaintiffs alleged facts sufficient to state a cause of action for damages in the form of increased costs and decreased health care benefits due to Defendants' violations of the APA.

The district court held a hearing on Defendants' exception on December 16, 2024, and the district court orally overruled the objection from the bench.[3] On December 20, 2024, the objection of no cause of action was reargued by *sua sponte* order of the court, after which the district court sustained Defendants' objection of no cause of action. On January 10, 2025, the district court signed a judgment sustaining Defendants' peremptory exception raising the objection of no cause of action, dismissing Plaintiffs' Third Amended Petition, and denying Plaintiffs the opportunity to amend. Plaintiffs filed a timely appeal and assigned the following errors to the district court's January 10, 2025 judgment: (1) the district court erred to the extent it dismissed Plaintiffs' claims due to a lack of proof of damages; and

---

[3] We note that the transcript of hearing shows the original hearing took place on December 12, 2024. However, the written reasons for judgment states the initial hearing was held on December 16, 2024.

(2) the district court erred to the extent it dismissed Plaintiffs' claims based on immunity from suit.

## RELEVANT LAW

As used in the context of the peremptory exception, a cause of action refers to the operative facts that give rise to a plaintiff's right to judicially assert an action against a defendant. **Doe v. Dynamic Physical Therapy, LLC**, 2024-0723 (La. App. 1 Cir. 12/27/24), 404 So.3d 1008, 1012, writ denied, 2025-00105 (La. 4/29/25), 407 So.3d 623. The peremptory exception raising the objection of no cause of action is used to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. **Doe**, 404 So.3d at 1012. The purpose of the objection of no cause of action is not to determine whether the plaintiff will ultimately prevail at trial, but to only ascertain if a cause of action exists. **Doe**, 404 So.3d at 1012. No evidence may be introduced to support or controvert the objection of no cause of action. La. C.C.P. art. 931.

The burden of demonstrating that a petition fails to state a cause of action is on the mover. **Doe**, 404 So.3d at 1013. An exception of no cause of action is triable solely on the face of the petition, see La. C.C.P. art. 931, and for purposes of resolving the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. **Doe**, 404 So.3d at 1012. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. **Doe**, 404 So.3d at 1012-13.

In reading a petition to determine whether a cause of action has been stated, it must be interpreted, if possible, to maintain the cause of action instead of dismissing the petition. Any reasonable doubt concerning the sufficiency of the petition must be resolved in favor of finding a cause of action has been stated. **Doe**, 404 So.3d at 1013. However, the petition must set forth material facts upon which the cause of action is based. La. C.C.P. art. 891(A); **Doe**, 404 So.3d at 1013. The correctness of

8

conclusions of law is not conceded for the purposes of a ruling on an exception raising the objection of no cause of action. **Doe**, 404 So.3d at 1013.

An objection of no cause of action is likely to be sustained only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief. **CamSoft Data Systems, Inc. v. Southern Electronics Supply, Inc.**, 2015-1260 (La. App. 1 Cir. 9/23/15), 182 So.3d 1009, 1016 (citing **City of New Orleans v. Board of Directors of Louisiana State Museum**, 98-1170 (La. 3/2/99), 739 So.2d 748, 756). Thus, dismissal is justified only when the allegations of the petition itself clearly show that the plaintiff does not have a cause of action, or when its allegations show the existence of an affirmative defense that appears clearly on the face of the pleadings. **City of New Orleans**, 739 So.2d at 756. When an objection of no cause of action is based on an affirmative defense such as immunity, the exception must be overruled unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based. **Parish of Ascension v. Simoneaux**, 2023-1146 (La. App. 1 Cir. 8/6/25), 419 So.3d 382, 387 (citing **Lambert v. Riverboat Gaming Enforcement Div.**, 96-1856 (La. App. 1 Cir. 12/29/97), 706 So.2d 172, 175, writ denied, 98-0297 (La. 3/20/98), 715 So.2d 1221).

After sustaining an objection of no cause of action, the opposing party must be given a fair opportunity to amend when the grounds of the objection pleaded by the peremptory exception may be removed by amendment. See La. C.C.P. art. 934. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed. La. C.C.P. art. 934. Because the objection of no cause of action raises a question of law and the district court's decision is based only on the sufficiency of the petition, a judgment sustaining an objection of no cause of action is reviewed by an appellate court *de novo*. **Doe**, 404 So.3d at 1013.

## DISCUSSION

Plaintiffs' first assignment of error is that the district court erred to the extent it dismissed Plaintiffs' claims due to a lack of proof of damages. In support of their objection of no cause of action, Defendants cited several communications between OGB and group benefits members, which were pasted into the body of their memorandum in support, to buttress their contention that Plaintiffs' Third Amended Petition should be dismissed because they "failed to prove that damages exist." First, we note the district court explicitly acknowledged at the hearing that it "cannot look into any other evidence other than that which is [pled] in the Plaintiffs' petition" in deciding an objection of no cause of action. Further, no evidence was introduced at the hearing. Even in the event evidence was introduced and/or considered, this court reviews the district court's rulings on an objection of no cause of action *de novo*, see **Doe**, 404 So.3d at 1013, and such evidence shall not be considered, see La. C.C.P. art. 931. As Plaintiffs repeatedly alleged financial loss and damages in the form of increased costs and decreased health care benefits due to Defendants' allegedly unlawful changes to the health care plans, we find Plaintiffs sufficiently alleged damages in their Third Amended Petition.

In their second and final assignment of error, Plaintiffs argue the district court erred to the extent it dismissed Plaintiffs' claims based on immunity.[4] Defendants asserted that Plaintiffs' Third Amended Petition should be dismissed because they are entitled to discretionary immunity under La. R.S. 9:2798.1, which states, in pertinent part:

> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

---

[4] Although Defendants consistently referred to this immunity as "qualified immunity," the statute upon which they rely, La. R.S. 9:2798.1, is Louisiana's discretionary immunity statute. As such, the immunity that Defendants assert is applicable will be referred to as discretionary immunity for the remainder of this opinion.

C. The provisions of Subsection B of this Section are not applicable:

(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

The Louisiana Supreme Court has established a two-part test for courts to follow when determining whether immunity under La. R.S. 9:2798.1 applies. **Dominique v. St. Tammany Parish**, 2019-0452 (La. App. 1 Cir. 9/16/20), 313 So.3d 307, 315, writ denied, 2020-01202 (La. 12/22/20), 307 So.3d 1045. A court must first determine whether a statute, regulation, or policy requires the government employee to follow a particular course of action. If there is such a requirement, then there is no choice or discretion involved, and the immunity does not apply. **Dominique**, 313 So.3d at 315. However, in those instances where the exercise of discretion is involved, the court must then determine whether that discretion is the kind which is shielded by the exception, that is, one grounded in social, economic, or political policy. The immunity statute does not protect operational governmental decisions, but only confers immunity for discretionary decisions based on social, economic, or political concerns. **Dominique**, 313 So.3d at 315.

The Third Amended Petition contains claims that OGB violated rulemaking procedures of the APA in amending the LAC as it pertains to health care and benefits plans available to State employees and retirees; that there was no legitimate basis for the September 30, 2014 emergency rule; and that Defendants violated their fiduciary duties to Plaintiffs as administrators of the health care and benefits plans.[5] The Third Amended Petition also included Plaintiffs' claim that Defendants improperly

---

[5] All of these claims were asserted in petitions filed prior to the Third Amended Petition and remained in play at the time of the hearing on Defendants' exception to the Third Amended Petition.

increased Plaintiffs' premiums by 5% without adhering to the APA and without providing Plaintiffs any notice of, or an opportunity to be heard on, said increased premiums. Defendants argue that these decisions were within the discretionary authority conferred upon OGB per La. R.S. 42:802(B).

According to La. R.S. 42:802(A)(1), OGB "shall directly exercise all powers, duties, functions, and responsibilities provided or authorized for it which are in the nature of policymaking, rulemaking, licensing, regulation, enforcement, or adjudication and shall directly exercise all advisory powers, duties, and functions provided to it by law." Further, La. R.S. 42:802(B) lists additional powers and duties, including, but not limited to:

> (1) To adopt and promulgate rules and regulations for the administration, operation, and management of programs and benefit plans offered through the [OGB], which shall not be inconsistent with the provisions of this Chapter or other applicable laws.
>
> * * *
>
> (5) To do and perform all things necessary or incident to the powers, duties, and functions vested in it.
>
> (6) To establish benefit plans, under the direction of the commissioner of administration, for the life, health, and other benefit programs offered through the office. This duty shall include the responsibility to ensure, to the greatest extent practicable, that the plans for benefits and coverages available for employees in all parts of the state are comparable with respect to coverages offered.
>
> (7) Subject to the board's review and recommendation, to establish premium rates, under the direction of the commissioner of administration[,] and in consultation with actuaries for the life, health, and other benefit programs offered through the office. The commissioner of administration, the chief executive officer of the [OGB], and the Policy and Planning Board shall also use any official information developed, gathered, and presented to the parties by the Group Benefits Estimating Conference in the development of premium rates.

Each of these duties and powers encompass Defendants' actions that Plaintiffs claim caused them damages in the Third Amended Petition. Although OGB has discretion in the changes that are ultimately made to the LAC regulations concerning State

health care and benefits plans, all of the duties and powers set forth in La. R.S. 42:802(B) are couched in mandatory terms and do not provide for any discretion. Therefore, the discretionary acts defense is inapplicable. See **Lambert**, 706 So.2d at 177.

Additionally, even if certain allegations in the Third Amended Petition are discretionary acts and decisions as claimed by Defendants, we are unable to determine through the exception raising the objection of no cause of action whether the defense will apply herein. Even where discretion is involved, the court must determine whether the discretionary act is the kind that is grounded in social, economic, or political policy, which is a question of fact to be determined through trial. See **Lambert**, 706 So.2d at 177-78.

## DECREE

For the foregoing reasons, we conclude Plaintiffs have stated a cause of action and Defendants are not entitled to discretionary immunity under La. R.S. 9:2798.1. As such, Defendants are not entitled to dismissal of Plaintiffs' claims. The district court's January 10, 2025 judgment sustaining Defendants' exception raising the objection of no cause of action and dismissing Plaintiffs' Third Amended Petition is hereby reversed.[6] The matter is remanded for further proceedings.

Costs of this appeal in the amount of $3,220.00 are to be assessed equally among the defendants.

**REVERSED AND REMANDED.**

---

[6] We note the overruling of an exception of no cause of action is not a definitive ruling that the affirmative defense is inapplicable under the facts to be established in the case. See **Lambert**, 706 So.2d at 176 n.2.